Roden v. Kendrick 















IN THE
TENTH COURT OF APPEALS
 

No. 10-94-222-CV

Â Â Â Â Â GEORGE RODEN, ET AL.,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellants
Â Â Â Â Â v.

Â Â Â Â Â JANET KENDRICK, ET AL.,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellees
 

From the 19th District Court
McLennan County, Texas
Trial Court # 93-1825-1
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

O P I N I O N
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â Â Â Â Â Â George Roden attempts to appeal from the court's order granting the State permission to enter
the Mount Carmel Branch Davidian Compound for the purpose of cleaning up hazardous waste
at the site. Because Roden failed to properly perfect his appeal, we will dismiss for want of
jurisdiction. See Tex. R. App. P. 40(a)(1). 
Â Â Â Â Â Â A civil litigant who is not exempt from paying costs may perfect an appeal in one of three
waysâfiling a cost bond, filing a cash deposit for costs, or filing an affidavit stating that he is
unable to pay the costs of the appeal. Id. 40(a)(1), (2); White v. Schiwetz, 793 S.W.2d 278, 279
(Tex. App.âCorpus Christi 1990, no writ). Generally, only governmental entities and their
agents are exempt from paying costs. See Tex. Civ. Prac. & Rem. Code Ann. Â§Â§ 6.01-6.03
(Vernon 1986 & Supp. 1994). When a private appellant is unable to pay the costs of the appeal,
he must file his affidavit of inability to pay within thirty days of the signing of the final order. See
Tex. R. App. P. 40(a)(3)(A), 41(a)(1). 
Â Â Â Â Â Â Prior to the court's rendition of a final judgment, Roden filed a "Notice of Appeal" from the
court's ruling. See id. 58(a). After the court rendered final judgment, Roden filed a "Former
Pauperus Request Transcript of The Record:"
Defendant request the court to send the [transcript] of the Record of the hearing of
6-23-6-24-94 in this cause all the papers filed and the testimony to the tenth court of
appeals, because the defendant as appellant in the tenth court has no money because Waco
allowed Koresh to destroy all of Defendants property in Waco both Association property
and personal property.
Â Â Â Â Â Â "âAffidavitâ means a statement in writing of a fact or facts signed by the party making it,
sworn to before an officer authorized to administer oaths, and officially certified to by the officer
under his seal of office." Tex. Gov't Code Ann. Â§ 312.011(1) (Vernon 1988). Although both
the notice of appeal and the request for a transcript were signed by Roden, neither was sworn to. 
Thus, there was no "affidavit" of inability to pay costs filed in the court. See White, 793 S.W.2d
at 280. 
Â Â Â Â Â Â Because Roden failed to file a cost bond or a proper affidavit of inability to pay cost and he
is not exempt from posting security for the cost of his appeal, we hold that he has failed to prefect
his appeal. Perfecting the appeal is a requirement to invoke our jurisdiction. See id. Thus, we
do not have jurisdiction over this cause and the appeal is dismissed for want of jurisdiction. 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â PER CURIAM

Before Chief Justice Thomas,
Â Â Â Â Â Â Justice Cummings, and
Â Â Â Â Â Â Justice Vance
Dismissed
Opinion delivered and filed November 9, 1994
Do not publish 



uns, blow guns, pop guns, and grease guns.Ô  Cruz, 238 S.W.3d at 388.  However, Â[a]bsent any specific indication to the contrary
at trial, the jury should be able to make the reasonable inference, from the
victimÂs testimony that the ÂgunÂ [] used in the commission of a crime, was, in
fact, a firearm.ÂÂ  Id.

In this case, the words ÂgunÂ and
ÂhandgunÂ were used to describe the weapon.Â  Although there is some evidence
that SalimÂs and AhmedÂs sight was obstructed during part of the robbery, they were
both threatened with guns and struck with guns.[2]Â 
Gipson struck Ahmed with a gun and forced Salim, at gunpoint, to open the
safe.Â  SalimÂs and AhmedÂs injuries bled and required staples.Â  Moreover, when
the Focus was located, officers recovered a live .380 caliber bullet.Â  The
record contains no evidence suggesting that Âthe gun used by [Gipson] was a toy
or anything other than a firearm.ÂÂ  Cruz, 238 S.W.3d at 389.

Deadly WeaponÂ  

Count one of the indictment charges
Gipson with striking Ahmed in the head with a handgun.Â  The evidence supports
this count.Â  However, count two of the indictment charges Gipson with striking
Salim in the head with a handgun.Â  Salim testified that he was struck by
someone other than Gipson.Â  Ahmed confirmed this testimony.Â  The charge
instructed the jury to find Gipson guilty if it found beyond a reasonable doubt
that Gipson Âeither acting alone or with another or others as a Âparty to an
offenseÂÂ caused bodily injury to Salim by striking him in the head with a
handgun. Â The jury was not instructed to make a deadly weapon finding.

A deadly weapon finding may be entered Âeven
against a defendant who never used or brandished a deadly weapon during the
commission of the offense, so long as he (1) was a party to an offense where a
deadly weapon was used or exhibited and (2) knew such a weapon would be used or
exhibited.Â Â Sarmiento
v. State, 93 S.W.3d 566,
569 (Tex. App.ÂHouston [14th Dist.] 2002, pet. refÂd).Â  In Sarmiento,
the jury was authorized to
convict Sarmiento of aggravated robbery either as a principal or as a party. Â See
id. at 567.Â  The jury found Sarmiento
guilty, but made no
affirmative deadly weapon finding.Â  Id.Â  The Fourteenth Court initially reformed
the judgment to delete the deadly weapon finding entered by the trial court,
but on motion for reconsideration, withdrew the portion of its opinion deleting
the deadly weapon finding and held:

[W]here the use of a deadly weapon is an
element of the offense, the State automatically carries the burden of proving
the defendant knew a weapon would be used or exhibited in the commission of the
offense. Â In other words, even as a party, a defendant cannot be convicted
unless his participation is accompanied with the intent Âto promote or assist
the commission of the offense.Â Â The offense here was aggravated
robbery, and the use of a deadly weapon was alleged in the indictment as an
element of the offense. Â Thus, before jurors were authorized to find appellant
guilty, even as a party, they first had to believe beyond a reasonable
doubt that appellant knew a deadly weapon would be used in the commission of
the offense. Â By its verdict, the jury necessarily made the factual finding to
support the entry of an affirmative finding of the use or exhibition of a
deadly weapon upon the judgment.Â Â Â Â Â  

Â 

Id. at 570 (internal citations omitted).Â  

Although Gipson did not strike Salim,
one of his companions did strike Salim.Â  The men arrived together in the same
vehicle and entered the store together. Â The robbery took place almost
immediately, with both Salim and Ahmed being struck with guns and bound.Â  GipsonÂs
fingerprint was recovered from the Focus and he was identified by Salim, Ahmed,
and Haight as one of the robbers.Â  The use of a deadly weapon was specifically
alleged in the indictment and the jury found Gipson guilty as charged in the
indictment.Â  The evidence shows that Gipson knew a deadly weapon would be used
during the commission of the offense.Â  See Johnson v. State, No.
08-03-00466 CR, 2005 Tex. App. LEXIS 2042,Â at *10 (Tex. App.ÂEl Paso Mar.
17, 2005, pet. refÂd) (not designated for publication) (evidence showed knowledge
where Johnson or a companion was seen with a gun before the robbery, JohnsonÂs companions
used guns to rob two victims while Johnson assaulted another victim, and one
victim thought Johnson struck her with a gun); see also Walton v. State,
No. 06-03-00147-CR, 2004 Tex. App. LEXIS 3264,Â at *6-7 (Tex.
App.ÂTexarkana April 12, 2004, no pet.) (not designated for publication)
(evidence supported a deadly weapon finding where Williams and Walton entered the store together and
acted in tandem during the robbery and that a shotgun used by Williams was
clearly visible during the robbery.).

By its verdict, the jury necessarily
made the factual finding to support the entry of an affirmative finding of the
use or exhibition of a deadly weapon upon the judgment.Â  Sarmiento, 93
S.W.3d at 570.Â  No separate finding was required for conviction.Â  See Marinos v. State, 186 S.W.3d 167,Â 177Â (Tex.
App.ÂAustin 2006, pet. refÂd); see also Navarro v. State, No. 03-01-00732-CR, 2002 Tex. App. LEXIS 7184, at *9-10 (Tex.
App.ÂAustin Oct. 10, 2002, pet. refÂd) (not designated for publication).

Accordingly, the evidence is legally
sufficient to support a finding that Gipson used a deadly weapon against Ahmed
and knew that his accomplice would use or exhibit a deadly weapon.Â  Viewing all
the evidence in the light mostÂ favorable to the verdict, the jury could
reasonably conclude, beyond a reasonable doubt, that Gipson committed the
offense of aggravated robbery as alleged in both counts of the indictment.Â  Curry
v. State, 30
S.W.3d 394, 406 (Tex. Crim. App. 2000) (citing Jackson
v. Virginia, 443
U.S. 307, 318-19, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979)).Â  We
overrule issue one.

INEFFECTIVE ASSISTANCE

Â Â Â Â Â Â Â Â Â Â Â  In his second issue, Gipson alleges
that he received ineffective assistance because trial counsel failed to: (1) prevent
GipsonÂs fingerprints from being unlawfully obtained; (2) object to admission
of the fingerprints; (3) object to admission of a mislabeled latent
fingerprint; (4) object to admission of a deferred adjudication at the
punishment phase; (5) file a motion to suppress; and (6) Âexercise reasonable
care or competence in obtaining or communicating information about his defense
strategy.Â

To prove ineffective assistance, an appellant must show that:
(1) counselÂs performance was deficient; and (2) the defense was prejudiced by
counselÂs deficient performance.Â  See Strickland
v. Washington,
466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); see
also Wiggins
v. Smith, 539
U.S. 510, 521, 123 S. Ct. 2527, 2535, 156 L. Ed. 2d 471 (2003).Â  The
appellant must prove, by a preponderance of the evidence, that there is no
plausible professional reason for a specific act or omission.Â  Bone v.
State, 77 S.W.3d
828, 836 (Tex. Crim. App. 2002). Â There is Âa strong
presumption that counselÂs conduct fell within a wide range of reasonable
representation.ÂÂ  Salinas v. State, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005).Â  Â[A]ny
allegation of ineffectiveness must be firmly founded in the record, and the
record must affirmatively demonstrate the alleged ineffectiveness.ÂÂ  Thompson
v. State, 9
S.W.3d 808, 813 (Tex. Crim. App. 1999).

Â Â Â Â Â Â Â Â Â Â Â Â Â  Gipson did not file a
motion for new trial alleging ineffective assistance.[3]Â 
The record is silent as to any reasons explaining trial counselÂs actions and we
will not so speculate.Â  See Thompson, 9 S.W.3d at 814.Â  Absent
a record revealing trial counselÂs strategy or motivation, Gipson has not
defeated the strong presumption that trial counselÂs actions fell within the
wide range of reasonable professional assistance. Â See id.Â  His ineffective assistance claim is
better raised through an application for a writ of habeas corpus. Â See Rylander
v. State, 101
S.W.3d 107, 110 (Tex. Crim. App. 2003); see also Bone, 77 S.W.3d at 837 n.30.

CONSTITUTIONAL VIOLATIONS

Â Â Â Â Â Â Â Â Â Â Â  GipsonÂs third issue contends
that his Fifth and Sixth Amendment rights were violated when Officer Phillip Martin
took his fingerprints without the presence of GipsonÂs attorney.Â  Because these
constitutional challenges were not raised in the trial court, this issue is not
preserved for appellate review.Â  See Tex. R.
App. P. 33.1(a);
see also Potter
v. State, 74 S.W.3d
105, 115-16 (Tex. App.ÂWaco 2002, no pet.).[4]

Â Â Â Â Â Â Â Â Â Â Â  The judgment is affirmed.





Â 

FELIPE REYNA

Justice

Â 

Before Chief
Justice Gray,

Justice
Reyna, and

Justice
Davis

Affirmed

Opinion
delivered and filed March 18, 2009

Do not publish

[CRPM]









[1] Â Â Â Â Â Â Â Â Â Â Â Â Â  The State contends that
we do not have jurisdiction over this appeal because GipsonÂs notice of appeal
was premature and failed to comply with Ex parte Gipson,
No. AP-75,90, 2008 Tex. Crim. App. Unpub. LEXIS 325 (Tex. Crim. App. April 30, 2008) (not designated for publication).Â  We previously rejected this complaint
when addressing the StateÂs motion to dismiss for want of jurisdiction.Â  See
Gipson v. State, 268 S.W.3d 862Â (Tex. App.ÂWaco
2008, order) (per curiam).





[2] Â Â Â Â Â Â Â Â Â Â Â Â Â  Salim testified that
blood ran into his eyes when struck, Ahmed testified that the lights were
turned off at some point during the robbery, and both men testified that they
were struck from behind.





[3] Â Â Â Â Â Â Â Â Â Â Â Â Â  Trial counsel filed a
motion for new trial alleging that the verdict was Âcontrary to the law and the
evidence.Â

Â 





[4] Â Â Â Â Â Â Â Â Â Â Â Â Â  Even if this issue were preserved,
Âa criminal defendantÂs fingerprints
may be taken prior to trial, without the presence or advice of his counsel.Â Â Garcia v. State, 930 S.W.2d 621,Â 625 (Tex.
App.ÂTyler 1996, no pet.); see Rinehart v. State, 463
S.W.2dÂ 216, 219 (Tex. Crim. App. 1971); see also
Harrington v. State, 424 S.W.2d 237, 242 (Tex. Crim.
App. 1968). Admission of such prints does not violate a defendantÂs
privilege against self-incrimination. Â See Garcia, 930 S.W.2d atÂ 625.